UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DR. ROLAND I. SAAVEDRA,
        Plaintiff,

     v.                                    Case No. 12-CV-01220

BOARD OF REGENTS OF THE UNIVERSITY
OF WISCONSIN SYSTEM, DAVID WARD, and
ROBERT N. GOLDEN,
        Defendants.

## DECISION AND ORDER

Plaintiff Dr. Roland I Saavedra is suing the Board of Regents of the University of Wisconsin System ("Board of Regents"), David Ward, the Interim Chancellor of the University of Wisconsin-Madison ("UW-Madison"), and Robert Golden, the Dean of the UW-Madison School of Medicine and Public Health for employment discrimination under 42 U.S.C. § 1983 and the Rehabilitation Act of 1973. Defendants move to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

The facts alleged in the complaint are as follows: In the summer of 2006, plaintiff was employed as a second-year resident physician at the UW-Madison School of Medicine and Public Health's program in Wausau, Wisconsin (the "Wausau Program"). At all relevant times, defendants were aware that plaintiff suffered from dyslexia, ADHD and a learning disability that rendered him unable to take standardized tests in the amount of time normally allotted. In mid-2006, plaintiff took Step 3 (the final step) of the United States Medical Licensing Examination ("USMLE") twice and failed it both times. Because plaintiff needed to pass the test to continue with his residency, Program Director Dr. Kevin

O'Connell told Program Coordinator Mary Zaglifa to write a memo to plaintiff. The memo, dated July 28, 2006, directed plaintiff to take an unpaid leave of absence starting August 1, 2006 so he could study for the exam. It informed him that his employment contract would terminate on September 30, 2006 but said he would be reinstated if he passed the USMLE Step 3 on or before December 1, 2006.[1]

After receiving the memo, plaintiff petitioned the National Board of Medical Examiners ("NBME") for extra test-taking time because his disabilities made it impossible for him to read all of the exam questions in the time normally allotted. On or about August 17, 2006, he received a response specifying the documents he needed to submit in order for his petition to be considered. Plaintiff submitted the required documents on or about September 26, 2006, including a letter from Cognitive Psychologist Dr. Shannon Schaffer giving comprehensive cognitive testing results and a written statement documenting plaintiff's disabilities. Plaintiff also shared Dr. Schaffer's letter with Dr. O'Connell and informed Dr. O'Connell that he was petitioning for additional test-taking time. Dr. O'Connell wished him "good luck." (Am. Compl. ¶ 17, ECF No. 5.)

On or about November 1, 2006, plaintiff emailed Dr. O'Connell asking for an extension of the December 1, 2006 deadline because he was still awaiting a reply to his request for an accommodation. Dr. O'Connell responded via email saying:

> "[W]e discussed the situation yesterday at our faculty meeting. We agreed to stick to the original agreement about having the deadline for having a passing score still be December 1, 2006. If you had tried for the accommodation, and the passing

---

[1] The memo is referred to in the complaint and central to plaintiff's claims. Therefore, I can consider its contents without converting defendants' motion into one for summary judgment. *See Santana v. Cook Cnty. Bd. of Review*, 679 F.3d 614, 619 (7th Cir. 2012).

2

Case 2:12-cv-01220-LA   Filed 10/09/13   Page 2 of 8   Document 21

score would not be available until late December or January, we would have considered you again for a position here, but it would not have the guarantee that we originally agreed to. So, bottom line, good luck on the test and we'll hope for a passing score."

(Am. Compl. ¶ 20.) After receiving this email, plaintiff withdrew his request for an accommodation so he could go ahead and schedule the exam. He took it in mid-November but failed again.

On December 4, 2006, plaintiff resubmitted his request for an accommodation to the NBME, and the NBME granted the petition two weeks later. Plaintiff called Dr. O'Connell to tell him that he had received the accommodation and to ask whether he might still be able to return to work. Dr. O'Connell told him, "Roland, we never told you we wouldn't consider you after the December 1 deadline." (Am. Compl. ¶ 25.)

Plaintiff retook the exam with extra time on May 3, 2007 and passed. He applied for reinstatement to the Wausau Program, but on June 14, 2007 Dr. O'Connell informed plaintiff that he could not return to the program because he did not pass the exam on time and "our Program just doesn't have the resources to accommodate you or work with you with extra time." (Am. Compl. ¶ 31.) Aside from his difficulty passing his medical licensing exam, plaintiff never needed extra time to perform any task during his residency.

To state a claim under Fed. R. Civ. P. 12(b)(6), the complaint must state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, it must allege sufficient facts to permit "the reasonable inference that defendant is liable for the injury alleged." *Id.* In determining whether a complaint states a claim, I accept all of plaintiff's allegations as true and take all reasonable inferences in plaintiff's favor. *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). Plaintiff claims defendants' are liable for discriminating

3

against him on the basis of his disability under 42 U.S.C. § 1983 and § 504 of the Rehabilitation Act, 29 U.S.C. § 794. He names defendants Ward and Golden in both their individual and official capacities.

Plaintiff sues defendants under § 1983 because he claims defendants violated his right to equal protection under the Fourteenth Amendment by disciplining him and terminating him. I will dismiss plaintiff's § 1983 claims against Ward and Golden in their individual capacities because plaintiff does not allege that either of these defendants was personally involved in the decision to terminate him or to deny his application for reinstatement. To establish a § 1983 claim against a government official in the official's individual capacity, a plaintiff must show that a government official violated federal law through her or his own individual actions. *Iqbal*, 556 U.S. at 675–77; *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010). The complaint alleges that Ward and Golden have general policymaking authority and that they are Dr. O'Connell's supervisors. But it does not allege that any policy promulgated by them caused the violation of plaintiff's constitutional rights, and there is no vicarious liability for supervisors under § 1983. *Id.*

I will also dismiss plaintiff's § 1983 claim against the Board of Regents because he concedes that the State of Wisconsin, which the Board of Regents is for this purpose, is not a "person" under § 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66-667 (1989). And I will dismiss plaintiff's § 1983 claims against Ward and Golden in their official capacities because these are also claims against the state. A suit against a state official in her or his official capacity is considered an action against the state unless it seeks only prospective relief to enjoin an ongoing violation of federal law. *Council 31 of the*

4

*American Federation of State, Cnty. and Mun. Emps. v. Quinn*, 680 F.3d 875, 881–82 (7th Cir. 2012) (discussing the *Ex Parte Young* doctrine). Here, plaintiff does not seek to enjoin an ongoing violation of federal law. Instead, he phrases his allegations in the past tense claiming that his constitutional rights were violated by individual employment decisions made by Dr. O'Connell back in 2006 and 2007. Thus, I conclude that plaintiff has not stated a valid claim for relief under § 1983.

I now turn to plaintiff's claims under § 504 of the Rehabilitation Act. Section 504 provides: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Plaintiff alleges that the University of Wisconsin System is a recipient of federal funds, and he claims defendants violated his rights under § 504 by refusing to accommodate his disability, terminating him and denying him reinstatement.

The parties agree that the statute of limitations for a claim under § 504 is the six-year statute of limitations for personal injury claims set out in Wis. Stat. § 893.53. *See Cheeney v. Highland Cmty. Coll.*, 15 F.3d 79, 81–82 (7th Cir. 1994) (the statute of limitations for Rehabilitation Act claims is governed by the limitations period for personal injury claims in the forum state). Since plaintiff did not file his complaint until December 1, 2012, his claims are untimely to the extent that they challenge the decision to place him on unpaid leave on August 1, 2006 or his termination, which was effective on September 30, 2006. *See Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) ("While complaints

5

typically do not address affirmative defenses, the statute of limitations may be raised in a motion to dismiss if 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'") (quoting *U.S. v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). Plaintiff can, however, challenge the denial of his application for reinstatement on June 14, 2007. Defendants argue that the university made a final decision not to reinstate plaintiff on November 1, 2006, but the complaint indicates otherwise. According to the complaint, Dr. O'Connell told plaintiff that, although there would be no guarantee of reinstatement, he would consider an application by plaintiff after the December 1, 2006 deadline if plaintiff passed the exam. "Only if the defendant has made clear that the plaintiff will not receive further consideration is the plaintiff on notice of a permanent exclusion . . . that starts the statute of limitations running on any future job applications." *Webb v. Indiana Nat'l Bank*, 931 F.2d 434, 437 (7th Cir. 1991).

Nonetheless, plaintiff has failed to state a plausible claim for relief under § 504. He claims defendants denied him reinstatement because they refused to provide him with a reasonable accommodation for his disabilities. "To establish [a] failure to accommodate claim, [a plaintiff] must show that, 1) [he] is a 'qualified individual with a disability'; 2) the defendant was aware of [his] disability; and 3) the defendant failed to reasonably accommodate [his] disability." *Gratzl v. Office of Chief Judges*, 601 F.3d 674, 678 (7th Cir. 2010) (quoting *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005)). The problem with plaintiff's claim is that he did not ask defendants to accommodate his disabilities. He says he needed extra time during his medical licensing exam because his dyslexia, ADHD and learning disability prevented him from reading all of the exam

6

questions in the time normally allotted. But he did not ask defendants for this accommodation and properly so because defendants had no power to grant it. Only the NBME could give plaintiff more time to take his exam and, when plaintiff petitioned it to do so, the NBME granted his petition.

What plaintiff asked defendants for was an extension of the December 1, 2006 deadline that Dr. O'Connell had given him for passing the exam. Plaintiff states that he made this request because he needed more time to file a petition with the NBME. However, the reason plaintiff needed more time to file a petition with the NBME was not because he was disabled but because he had previously failed to file such a petition despite having an opportunity to do so before both his first and second attempts at the exam. In other words, plaintiff did not take the steps necessary to control for his disabilities so he could timely pass his medical licensing exam. The Rehabilitation Act did not require defendants to grant plaintiff's request to extend the December 1, 2006 deadline for passing the exam because it was not a request to accommodate plaintiff's disabilities. Where an employee has failed through his own fault to take the steps necessary to manage a controllable illness, the Rehabilitation Act does not require an employer to give the employee a second chance. *See Siefken v. Vill. of Arlington Heights*, 65 F.3d 664, 667 (7th Cir. 1995). Thus, I conclude that Dr. O'Connell had no obligation to grant plaintiff's request to extend the December 1, 2006 deadline for passing the exam.

Since plaintiff has failed to state a plausible claim for relief under § 504, I do not need to address defendants' argument regarding Ward's and Golden's individual liability under the Rehabilitation Act.

**THEREFORE, IT IS ORDERED** that defendants' motion to dismiss (Docket #10) is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 9th day of October, 2013.

                                                             s/ Lynn Adelman
                                                             _____
                                                             LYNN ADELMAN
                                                             District Judge